IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
UNITED STATES,                  )
                                )
        v.                      )
                                )
WILLIAM DANIELCZYK, Jr., &      )   1:11cr85 (JCC)
EUGENE BIAGI,                   )
                                )
        Defendants.             )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Eugene R. Biagi's ("Defendant") Motion to Compel Production of Exculpatory Evidence [Dkt. 123] ("the Motion"). For the following reasons, the Court will grant in part and deny in part Defendant's Motion.

### **I. Background**

1. Factual Background

The Government alleges that Mr. Biagi, as an executive of Galen Capital Group, LLC, along with co-defendant Mr. Danielczyk, as Chairman of Galen Capital Corporation (together, "Galen"), subverted federal campaign contribution laws by reimbursing their employees' costs of attending two fundraisers Mr. Danielczyk co-hosted for Hillary Clinton's 2006 Senate and 2008 Presidential campaigns.

2. Procedural Background

The instant Motion to Compel was filed by Defendant on November 12, 2012.  The Government filed their Opposition to Defendant's Motion to Compel [Dkt. 129] ("Opposition" or "the Government's Opposition") on November 30, 2012.  Defendant filed a Reply in Support of their Motion to Compel [Dkt. 135] ("Defendant's Reply") on December 12, 2012.

Defendant's Motion to Compel is now before the Court.

**II. Analysis**

Defendant's Motion to Compel seeks the Government's production of material falling into three categories. First, Defendant seeks the production of evidence "indicating that Mr. Biagi lacked the requisite *mens rea*, *i.e.*, that he did not know that his conduct was illegal[.]" (Def. Mot. 1.)  Second, Defendant seeks "evidence indicating that certain documents bearing Mr. Biagi's signature were not in fact signed by him[.]" (*Id*.)  Third, Defendant seeks the production of "witness statements failing to mention Mr. Biagi in circumstances in which he would ordinarily be mentioned were he guilty." (*Id*.)  Defendant has moved for the Court's entry of an order made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) that would instruct the Government to "make inquiry and to disclose forthwith to the defense any and all information in its

possession which tends to mitigate guilty, to support a defense, and/or mitigate punishment." (*Id.*)

Arguing in support of their Motion, Defendant has charged that materials falling into the three aforementioned categories were requested during discovery but not produced by the Government. Defendant has alleged that the Government disagrees that the aforementioned categories of information are subject to *Brady* disclosure and has further asserted that much of the information requested can in fact be found in its memoranda of witness interviews, and thereby constituting Jencks Act materials governed by Federal Rule of Criminal Procedure 26.2 that are required to be produced five calendar days before trial under the agreed-upon Discovery Order in this case.[1] (Def. Mot. 2.) Defendant argues that, to the extent that the witness materials contain information subject to *Brady*, the Government's reliance on the Jencks Act contravenes the Due Process Clause requires disclosure of the material "in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985). Defendant contends that production of the materials on the Jencks deadline would not allow for effective use of any exculpatory evidence therein at trial. Defendant also argues that the Jencks Act only requires

---

[1] Under the Jencks Act, the Government is required to produce witness statements, adopted by the witness, to the Defendant. 18 U.S.C. 3500(e)(1)(3).

3

production of witness statements for those witnesses the Government calls at trial, and to the extent the Government has interviewed person who it has chosen not to call as trial witnesses, those interview memoranda would not be subject to any discovery obligation other than *Brady*. (Def. Mot. 2-3.) Defendant asserts that the Government should be ordered to search for and produce all information falling into the three aforementioned categories. Rather than suggesting that the Court conduct an *in camera* review of the totality of the witness materials, Defendant argues that the most reasonably practicable way of ensuring that the Government complies with its *Brady* obligations in this case is for this Court to order that the entirety of the witness statements, interviews, and memoranda in the Government's possession be produced to Defendant immediately. (Def. Rep. 6.)

There is no general Constitutional right to discovery in a criminal case. *See*, *e.g.*, *Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987). *Brady* announced the requirement, under the Due Process Clause, that the Government must disclose "evidence favorable to an accused . . . where that evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 88. Evidence relevant to guilt or punishment includes both exculpatory and impeachment evidence. *Strickler v. Greene*, 119 S.Ct. 1936, 1948 (1999). Evidence is material and must be

disclosed where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The Third Circuit has held that the inquiry about the probability of a different outcome includes "possible effects of non-disclosure on the defense's trial preparation." *Gov't of the Virgin Islands v. Martinez*, 780 F.2d 302, 306 (3d Cir. 1985). However, the aforementioned definition of "materiality" discussed in *Bagley*, *Strickler*, and other appellate cases is a standard articulated in the post-conviction context for appellate review. In this pretrial setting, such a standard is far less useful, and courts have held that circumstances necessitate a somewhat different inquiry.

> The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed - with the benefit of hindsight - as affecting the outcome of the trial.

*United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005)(citing *United States v. Sudikoff*, 36 F.Supp.2d 1196, 1198-1199 (C.D.Cal.1999)).

To be sure, the prosecution must also make such disclosures in sufficient time for the defendant to "use the

5

favorable material effectively in the preparation and presentation of its case ..." *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976)(citing *United States v. Elmore*, 423 F.2d 775, 779 (4th Cir. 1970), *cert. denied*, 429 U.S. 924 (1976); *see also Hamric v. Bailey*, 386 F.2d 390, 393 (4th Cir. 1967)("If it is incumbent on the State to disclose evidence favorable to an accused, manifestly, that disclosure to be effective must be made at a time when the disclosure would be of value to the accused."). Indeed, it is settled that "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading and Paving, Inc.*, 760 F.2d 527, 531 (4th Cir.), *cert. denied sub nom.*, *Dellinger. Inc. v. United States*, 474 U.S. 1005 (1985).

However, "*Brady* requests cannot be used as discovery devices." *United States v. Caro*, 597 F.3d 608, 616 (4th Cir. 2010). Indeed, *Brady* does not require that any materials be turned over on the chance that they might be exculpatory. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

In some cases, "it is impossible to say whether" requested information "may be relevant to [a] claim of innocence." *Ritchie*, 480 U.S. at 57. In cases in which "an accused cannot possibly know, but may only suspect, that particular information exists which meets [*Brady*] requirements, he is not required ... to make a particular showing of the exact information sought and how it is material and favorable." *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995). In those circumstances, a defendant need only "make some plausible showing" of how of how the evidence would be "both material and favorable to his defense." *Ritchie*, 480 U.S. at 58 n. 15; *Love*, 57 F.3d at 1313. In making the requisite "plausible showing" of the existence of exculpatory information, a defendant must "identify the requested confidential material with some degree of specificity." *United States v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996). At that point, the defendant "becomes entitled [] to have the information — not immediately disclosed to him — but submitted to the trial court for *in camera* inspection to determine if in fact the information is *Brady* material subject to disclosure." *United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011) (internal citations and quotations omitted).

However, "[i]n the rare circumstances where [an *in camera*] inspection is required, its purpose is not to provide a general discovery device for the defense[.]" *United States v.*

7

*Leung*, 40 F.3d 577, 583 (2d Cir. 1994). Furthermore, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [Government's] files." *Ritchie*, 480 U.S. 39, 59.

> In the typical case where a defendant makes only a general request for exculpatory material under *Brady* ... it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.

*Id*. It is thus clear that comprehensive "open file" discovery is not mandated. *Kasi v. Angelone*, 300 F.3d 487, 504 (4th Cir. 2002) ("Nor does the *Brady* right to obtain exculpatory evidence equate to a right to rummage through governmental files.") Indeed, "[i]f everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of practice." *Agurs*, 427 U.S. at 109. Furthermore, "*Brady* does not oblige the government to provide defendants with evidence that they could obtain from other sources by exercising reasonable diligence." *United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991)(citing *United States v. McKenzie*, 768 F.2d 602 (5th Cir. 1985)).

The Fourth Circuit's materiality standard under Rule 16 requires that the Government "permit the defendant to inspect and to copy or photograph" items that are within the Government's possession, custody, or control and that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). It thus provides for much broader discovery than that constitutionally required under *Brady*. But, in this Circuit, materials requested before trial are only "material" where there is "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Caro*, 597 F.3d at 621 (citing *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)).

The Court notes from the outset that, rather than seeking to compel a particular document or predefined series of documents in the Government's possession, Defendant has moved for the production of any witness documents containing any of three specified categories of material. Defendant has not definitively demonstrated that any material falling into the three aforementioned categories actually is actually possessed by the prosecution and has not been disclosed to Defendant. Rather, it is the contention of Defendant that, throughout the course of the present proceedings, the Government has demonstrated that it is "not competent to be entrusted with the

9

task of reviewing the evidence they have collected to satisfy Mr. Biagi's Due Process right to pre-trial production of all exculpatory evidence in the [G]overnment's possession." (Def. Rep. 4.)  In essence, the very basis for Defendant's Motion is their suspicion that the Government "fails to comprehend its *Brady* obligation." (*Id.*)

Regarding the first category of material sought by Defendant, this Court has previously touched upon the materiality of *mens rea*.  With respect to Counts Two, Three, Six, and Seven, as set forth in this Court's Memorandum Opinion on the motions to dismiss, the applicable *mens rea* in this case follows from *United States v. Bryan*, 524 U.S. 184 (1998): Defendant must have committed the *actus reus* while believing his actions to be unlawful, though not necessarily with specific knowledge of the law.  Thus, if information was communicated to Defendant suggesting that his behavior was not unlawful, that information would be material and favorable as negating the requisite *mens rea*.  Statements and evidence that it is less likely that Defendant believed his conduct was illegal would plainly be favorable and material to his defense.  *United States v. Jefferson*, 594 F.Supp.2d 655, 667 (E.D.Va. 2009) (evidence that "tends to negate an element of the crime" is considered to be exculpatory under *Brady*).  Consequently, the Court believes the

Defendant has made the requisite "plausible showing" as to material in this category.

Regarding the second category of information sought by Defendant, *i.e.*, "evidence indicating that certain documents bearing Mr. Biagi's signature were not in fact signed by him[,]" the Court notes that, as a general proposition, Defendant would ostensibly represent the best judge of whether a given signature of his name is his own.  Nevertheless, the Court notes that even "inadmissible evidence may be material under *Brady*." *United States v. Gil*, 297 F.3d 93, 104 (2nd Cir. 2002).  Furthermore, "[i]nadmissible evidence may be material if the evidence would have led to admissible evidence." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  The existence of the evidence described would seemingly tend to undermine some instances of Defendant's participation in overt acts in furtherance of the conspiracy that has been alleged in the Superseding Indictment, particularly those overt acts alleged at 13(c) and 13(d). [Dkt. 87.]  The Court believes that Defendant has made the requisite "plausible showing" that such evidence would be favorable and material to his defense.

Regarding the final category of information sought by Defendant, "witness statements failing to mention Mr. Biagi in circumstances in which he would ordinarily be mentioned were he guilty," Defendant seeks the production of statements

11

> by witnesses who either (a) affirmatively
> indicate that Mr. Biagi was not involved in
> the conduct alleged as criminal in the
> Superseding Indictment; or (b) omit mention
> of Mr. Biagi and were either i) made by a
> witness in a position to know whether Mr.
> Biagi was engaged in illegal conduct, or ii)
> made in a context in which the person likely
> would have mentioned Mr. Biagi if he
> believed Mr. Biagi had committed criminal
> acts.

(Def. Mot. 9.) The Court does not believe that this category has defined this category or the requested constituent material with sufficient specificity. Far from having "identif[ied] the requested confidential material with some degree of specificity," the nebulous manner in which this category has been defined provides scant limitation as to the material that could conceivably be produced under this category. The breadth of authority holds that the Defendant is not entitled to the production of the totality of the Government's witness materials and memoranda, as "the *Brady* right to obtain exculpatory evidence [does not] equate to a right to rummage through governmental files" based upon mere speculation that such exculpatory evidence might exist. *Kasi*, 300 F.3d at 504. Furthermore, *Brady* does not require that any materials be turned over on the chance that they might be exculpatory. *Agurs*, 427 U.S. at 109-10. This Court declines to tax its limited judicial resources by conducting a sufficiently thorough *in camera* review of the entirety of Government's voluminous witness materials, as

"*Brady* does not require the trial court to make an in camera search of the government files for evidence favorable to the accused." *United States v. Harris*, 409 F.2d 77, 80-81 (4th Cir. 1969)(citing *United States v. Frazier*, 394 F.2d 258, 262 (4th Cir. 1968)).

In light of the Government's representation that it has already disclosed all *Brady* exculpatory material in its possession, and intends to disclose any additional *Brady* material exculpatory later discovered, the Government is reminded of its duty to timely provide such information at the risk of depriving Defendant of due process of law, requiring a reversal of any conviction obtained. If the Government genuinely is in doubt as to its obligations with respect to particular evidence or material, it may submit specific information to the Court *in camera* for review.

Regarding Defendant's assertion that the current deadline for the production of Jencks materials is an insufficient allocation of time in which for Defendant to conduct review of the breadth of the Government's anticipated production, the Court notes that current deadline for production of Jencks material is a mere five calendar days before trial. The Court agrees that this is an insufficient provision of time in which to review materials that have been described as totaling around 280 separate documents. Accordingly, the Court

will require the Government to produce those Jencks materials to Defendants three weeks prior to trial.

### III. Conclusion

For the foregoing reasons, Defendant Eugene Biagi's Motion to Compel Production of Exculpatory Evidence will be granted in part and denied in part. The Court rules as follows:

(1). Defendant's Motion to Compel is granted as to material indicating that "Mr. Biagi lacked the requisite *mens rea*, *i.e.*, that he did not know that his conduct was illegal;"

(2). Defendant's Motion to Compel is granted as to material "indicating that certain documents bearing Mr. Biagi's signature were not in fact signed by him[;]"

(3). Defendant's Motion to Compel is denied as to "witness statements failing to mention Mr. Biagi in circumstances in which he would ordinarily be mentioned were he guilty[;]" and

(4). The Government's Jencks materials must be produced to Defendants three weeks prior to trial.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| January 10, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |